Brandon J. Baxter (9122)
Michael D. Jewell (14380)
PECK HADFIELD BAXTER & MOORE, LLC
399 N. Main Street
Suite 300
Logan, UT  84321
(435) 787-9700
bbaxter@peckhadfield.com
mjewell@peckhadfield.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ONE WORLD LANTERN FESTIVAL, LLC, a Utah limited liability company, and YOLO ENTERPRISES, LLC, a Utah limited liability company,<br><br>    Plaintiffs,<br><br>vs.<br><br>1000 LIGHTS, LLC, a Utah limited liability company (formerly ANDREW KENNEY & ASSOCIATES, LLC ), NICHOLAS MENENDEZ, an individual, ZACH WERTZ, an individual, and ANDREW KENNEY, an individual,<br><br>    Defendants,<br><br>vs.<br><br>MICHAEL SCHAEFER, an individual, and DAVID KNIGHT, an individual,<br><br>    Third-party Defendants. | **MOTION FOR PRELIMINARY INJUNCTION**<br><br>Civil No. 1:18-cv-00140-CW-EJF<br><br>Judge Clark Waddoups<br>Magistrate Judge Evelyn J. Furse |

Through counsel, One World Lantern Festival, LLC ("One World") respectfully moves the Court to enter a Preliminary Injunction against Defendants pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## I. RELIEF SOUGHT

One World asks the Court to enter a Preliminary Injunction:

1. Enjoining the Defendants from using any variation of the terms "water lantern festival" and "light the water" or anything confusingly similar during the pendency of this action;

2. Enjoining the Defendants from capitalizing on existing confusion by contacting venues already booked by One World and attempting to schedule an event within a close timeframe prior to One World's events;

3. Entering any other temporary order that is necessary in the Court's discretion to effectuate this Court's Preliminary Injunction.

## II. INTRODUCTION

Third-party Defendants Michael Schaefer ("Schaefer") and David Knight ("Knight") are the principals of One World and YOLO Enterprises, LLC ("YOLO"). One World organizes, markets, and hosts community events using its Water Lantern Festival and Light the Water trademarks. One World's events bring large groups of people together to participate in an array of activities culminating in a floating lantern ceremony (each, a "WLF Event" and collectively, "WLF Events"). YOLO provides employees to One World in order to oversee and carry out the WLF Events. One World began marketing the sale of tickets for WLF Events in late 2017 using the Water Lantern Festival and Light the Water trademarks and began hosting WLF Events in

2

early 2018.  One World applied for federal registration for the Water Lantern Festival mark on March 3, 2018 and the Light the Water mark on July 13, 2018.  Both applications are currently pending.

Defendant Nicholas Menendez ("Menendez") is a former employee of YOLO who worked extensively in planning, marketing, and carrying out many of One World's WLF Events.  Defendant Andrew Kenney ("Kenney") is a former contractor for One World who worked with Menendez in carrying out certain WLF Events.

While still employed by YOLO and being paid to produce WLF Events, Menendez, along with Kenney, began preparing to start a company that would compete with One World in the field of event production, particularly floating lantern events.  Many of Menendez's preparations involved improperly accessing the email accounts of his supervisors at One World in order to access One World's confidential and proprietary information.

Defendant 1000 Lights, LLC ("1000 Lights") was formed by Kenney on July 10, 2018 as Andrew Kenney & Associates, LLC.  Following its receipt of a cease and desist letter from One World, 1000 Lights changed its name to 1000 Lights, LLC.  1000 Lights originally marketed its floating lantern event as "Light the Water Lantern Festival", combining One World's Light the Water and Water Lantern Festival marks.

Despite changing its name from Light the Water to 1000 Lights, 1000 Lights continued (and continues) to use the phrases "light the water" and "water lantern festival", including using the website url www.lightthewater.com, which simply redirects to 1000 Lights' website at www.1000lightsfestival.com, reinforcing the perception that 1000 Lights is somehow associated with One World.  In conjunction with using the www.lightthewater.com website url, 1000 Lights

also uses the term "light the water", including a "Light the Water" logo in promotional materials. Furthermore, while 1000 Lights no longer uses "Light the Water Lantern Festival", it continues to use "1000 Lights Water Lantern Festival" and variations of "water lantern festival".

In addition to its use of the terms "light the water" and "water lantern festival", Defendants have also engaged in concerted and intentional behavior to convey an association with One World, damage One World's goodwill in the marks, and dilute the strength of the marks. Furthermore, Defendants have recently begun contacting venues that are currently scheduled to host a WLF Event and have attempted to schedule their own event immediately prior to the WLF Event in order to capitalize on existing confusion.

Defendants' continued use of "light the water" and "water lantern festival" dilutes One World's marks and causes ongoing damage to the goodwill One World has built in the marks. Furthermore, Defendants' efforts to capitalize on their infringement by deliberately fostering confusion and interfering with One World's economic relationships has damaged One World's business and will continue to damage One World's business unless such behavior is enjoined.

One World therefore asks the Court to enter a preliminary injunction enjoining Defendants from using any variation of the terms "light the water" and "water lantern festival" and from interfering with One World's economic relations by contacting current WLF Event venues and attempting to schedule 1000 Lights' events immediately prior.

### III. FACTS

The facts set forth in this section are supported by the Complaint (ECF No. 2) ("Complaint"), the Declaration of One World Manager, David Knight and its exhibits filed concurrently with this Motion (the "Knight Decl."), and the Answer and Counterclaim (ECF No.

12) (referred to herein as the "Answer" and the "Counterclaim", respectively).  One World also requests an evidentiary hearing at which it will offer testimony and documentary evidence to prove it is entitled to the Preliminary Injunction it seeks.

**A.      One World's Water Lantern Festival and Light the Water Trademark Use**

One World is the senior user of the Water Lantern Festival and Light the Water trademarks, which are entitled to trademark protection.

1.      <u>Water Lantern Festival Trademark</u>

One World began using the Water Lantern Festival mark to market the sale of tickets to WLF Events in late 2017, selling its first WLF Event tickets using the mark on December 7, 2017.  Knight Decl. ¶ 5.

Prior to 1000 Lights' use of "water lantern festival", One World used the Water Lantern Festival mark exclusively in commerce since at least November 16, 2017.  <u>Id.</u> ¶ 19.  Prior to One World's use of the Water Lantern Festival mark and the associated success of the WLF Events, the term "water lantern festival" was not used by consumers in relation to events similar to WLF Events.  Google trend reports show that, prior to One World's use of the Water Lantern Festival mark in 2017, consumers searching the internet for similar events almost never searched the term "water lantern festival" but instead searched the term "floating lantern festival".  <u>Id.</u>  Since One World's use of the Water Lantern Festival mark, consumer use of the term "water lantern festival" has increased and become synonymous with WLF Events.  <u>Id.</u>

Since One World's formation, it has extensively advertised and marketed its WLF Events using the Water Lantern Festival mark, spending in excess of $510,000.00 on advertising and promotion in 2018 alone.  <u>Id.</u> at ¶ 21.  One World's marketing efforts resulted in over 35 WLF

5

Events with an aggregate of more than 120,000 participants across the United States in 2018. Id. at ¶ 22. Based upon One World's efforts and success in marketing the Water Lantern Festival mark in association with WLF Events, consumers associate the term "water lantern festival" exclusively with One World's services. Id. at ¶ 23.

      2.     <u>Light the Water Trademark</u>

One World began using the Light the Water mark to market the sale of tickets to WLF Events in late 2017 and sold its first WLF Event tickets using the marks on December 7, 2017. Id. at ¶ 5. One of the earliest iterations of One World's website – at least as early as December 8, 2017 – included the tagline "Light the Water", stating that "Water Lantern Festival is coming to light the water in Salt Lake City" and "Water Lantern Festival brings people together to Light the Water (capitalized) in a magical night that includes food, music, and beauty as the lanterns reflect upon the water." Id. at ¶ 6. In addition to using the Light the Water mark on its website, One World used the Light the Water mark in its ticket purchase confirmation notification to consumers beginning as early as April 26, 2018. Id. at ¶ 7.

**B.**    **1000 Lights' Infringing Use of the Trademarks**

1000 Lights was formed on July10, 2018, and began marketing its services using "water lantern festival" and "light the water" on July 17, 2018. Counterclaim at ¶ 44. In August 2018, One World sent 1000 Lights a cease and desist letter demanding that 1000 Lights cease its use of the terms "water lantern festival" and "light the water". Knight Decl. at ¶ 13. 1000 Lights, through its attorney, Spencer Phillips, stated that 1000 Lights would do a full rebrand, that it would not use the phrase "light the water" or "water lantern festival", and that it would make a good faith effort to avoid consumer confusion between the brands. Id. at ¶ 14. However, 1000

Lights continues to use the website url www.lightthewater.com (which redirects to 1000 Lights' website) and have continuously used the terms "light the water", "Light the Water Lantern Festival", "1000 Lights Water Lantern Festival" and "water lantern festival" in promoting its services.  Id. at ¶¶ 15-17.

C.      **Consumer Confusion**

In addition to its use of "light the water" and "water lantern festival" in its confusingly similar marks, 1000 Lights has engaged in concerted and intentional behavior to (a) convey an association with One World, (b) damage One World's goodwill in its marks, and (c) dilute the strength of One World's marks.  Id. at ¶ 25.

Prior to hosting any events, 1000 Lights engaged in a social media marketing campaign in which it targeted consumers who had attended a WLF Event and overtly implied that 1000 Lights had been associated with the event.  Id. at ¶¶ 26-30.  In addition to 1000 Lights' attempt to confuse consumer through social media, 1000 Lights' website included fake testimonials of non-existent consumers who purported to have attended a 1000 Lights event, further reinforcing the idea that 1000 Lights was somehow associated with existing WLF Events.  Id. at ¶ 31.  Menendez even continued using his One World email address, nick@waterlanternfestival.com, to perform work on behalf of 1000 Lights, which likely led people to believe 1000 Lights is associated with One World.  Id. at ¶ 32.

1000 Lights' use of the terms "water lantern festival" and "light the water", in conjunction with their deliberate and calculated attempts to create consumer confusion, has created ample evidence of confusion from event venues and consumers.  Since 1000 Lights began marketing and hosting its events, One World has received emails, phone calls, and/or

website inquiries from over one hundred consumers who have reached out to One World seeking information about events scheduled by 1000 Lights. Id. at ¶ 34.

One World's office continues to receive phone calls, emails, and website inquiries from consumers who are confused about the relationship between One World and 1000 Lights on a weekly basis and for each event hosted by 1000 Lights, One World has received multiple emails, phone calls and/or website inquiries from confused consumers. Id. at ¶ 35. In addition to consumer confusion, prospective host venues have expressed confusion regarding whether or not 1000 Lights is associated with One World. Id. at ¶¶ 37-42. Representatives from the Better Business Bureau have investigated the relationship between One World and 1000 Lights because of the confusion. Id. at ¶ 42.

Seeking to further capitalize on the confusion, 1000 Lights has recently increased its use of "water lantern festival", changing the name of its Facebook page from "1000 Lights" to "1000 Lights Water Lantern Festival" and promoting its February 23, 2019 event in Tuscon, Arizona as simply "Water Lantern Festival". Id. at ¶ 46.

### IV. DISCUSSION

**A.      Preliminary Injunction Standard**

To obtain a preliminary injunction, the movant must show that: (1) there is a substantial likelihood of success on the merits of the movant's claims; (2) the movant will experience irreparable injury if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the opposing party; and (4) the injunction would not be adverse to the public interest. Amoco Oil Co. v. Rainbow Snow, Inc., 809 F.2d 656, 661 (10th Cir. 1987). One World has satisfied each of the foregoing factors.

### 1. There is a Substantial Likelihood that One World will Succeed on the Merits of its Claims

"The substantial likelihood of success requirement necessitates 'showing a reasonable probability that [the [movant]] will ultimately be entitled to the relief sought." DTC Energy Grp., Inc. v. Hirschfeld, 912 F.3d 1263, 1277 (10th Cir. 2018) (quoting Crowther v. Seaborg, 415 F.2d 437, 439 (10th Cir. 1969)). The underlying claim related to this Motion is One World's claim against Defendants for trademark infringement. As shown below, One World can demonstrate a substantial likelihood of success on its claims for trademark infringement.

#### a. 1000 Lights has Infringed, and Continues to Infringe, Upon One World's "Water Lantern Festival" and "Light the Water" Marks.

To establish a *prima facie* case for trademark infringement, One World will show that: (1) One World's Water Lantern Festival and Light the Water marks are protectable; (2) One World has used the Water Lantern Festival and Light the Water marks in commerce in connection with the sale of goods or services; and (3) 1000 Lights' use of the terms "water lantern festival", and its use of "light the water" creates a likelihood of consumer confusion. See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research, 527 F.3d 1045, 1054 (10th Cir. 2008).

##### i. "Water Lantern Festival" and "Light the Water" are Protectable Trademarks.

*Water Lantern Festival*

Contrary to 1000 Lights' contention that One World's Water Lantern Festival trademark is merely descriptive, the Water Lantern Festival mark is protectable as a suggestive mark. The generally accepted distinction between descriptive and suggestive marks is that descriptive marks immediately and directly bring to mind a particular quality, feature, characteristic, or aspect of the associated goods or services, while suggestive marks are those which require the

9

use of imagination, thought or reasoning to call to mind a particular quality, feature, characteristic, or aspect of the associated goods or services. Educ. Dev. Corp. v. Econ. Co., 562 F.2d 26, 29 (10th Cir. 1977).

When determining whether a mark is merely descriptive, the Court should not dissect the mark into isolated elements, but must consider the commercial impression of the mark as a whole." DuoProSS Meditech Corp. v. Inviro Medical Devices, Ltd., 695 F.3d 1247, 1252 (Fed.Circ. 2012). The Court may "ascertain the meaning and weight of each of the components that make[] up the mark, [but] must consider the mark as a whole and do so in the context of the goods or services at issue."

The Water Lantern Festival mark is used to market and sell tickets to WLF Events, which consist of community gatherings featuring a variety of activities, including sporting events, art exhibitions, dances, and a floating lantern ceremony. Despite the inclusion of a floating lantern ceremony in One World's WLF Events, the Water Lantern Festival mark requires the use of imagination, thought, and/or reasoning to call to mind any particular quality, feature, characteristic, or aspect of the associated service primarily because the term "water lantern" should not be equated with "floating lantern". A search for the term "water lantern" in Merriam-Webster's online dictionary returns no results. For reference, terms such as "water fountain" and "water taxi" are defined by Merriam-Webster. While the term "floating lantern" uses an adjective to simply describe a characteristic of a lantern, the term "water lantern" does not describe or define a characteristic of a lantern but is a wholly engineered term that simply conveys an abstract association between water and lanterns. Because "water lantern" is not a defined term and is not used to simply describe a characteristic of the lanterns used during WLF

10

Events, the Water Lantern Festival mark should not be considered descriptive of a WLF Event. Rather, the "Water Lantern" component of the Water Lantern Festival mark is suggestive of the WLF Events because it requires consumers to use imagination, thought, and/or reasoning to call to mind the services of a WLF Event.

However, even if the Court were to determine that the Water Lantern Festival mark is merely descriptive, the Water Lantern Festival mark would still be entitled to trademark protection because it has obtained acquired distinctiveness – or secondary meaning – in the marketplace. Secondary meaning is a question of fact and may be established by circumstantial evidence, such as (1) the length and manner of use of the mark; (2) the nature and extent of advertising and promoting the mark; (3) the efforts made in promoting a conscious connection, in the public's mind, between the mark and a particular product/service; (4) actual consumer confusion; (5) proof of intentional copying; and/or (6) evidence of sales volume. Forney Indus., Inc. v. Daco of Missouri, Inc., 835 F.3d 1238, 1253 (10th Cir. 2016).

One World has used the Water Lantern Festival to market WLF Events since at least November 16, 2017 and used the mark exclusively until Defendants began using its infringing mark. See Declaration of One World Manager, David Knight, in Support of Motion for Preliminary Injunction ("Knight Dec.") at ¶ 18. Internet search records reveal a conscious connection in consumers' minds between the Water Lantern Festival mark and One World's WLF Events. For example, a Google Trends report shows that the term "water lantern festival" was almost never searched by the public prior to One World's use of the Water Lantern Festival mark in association with the marketing and sale of tickets to WLF Events. Id. at ¶ 19. On the other

hand, a Google Trends report shows that the term "floating lantern festival" has been used extensively by consumers beginning as early as 2005. Id. at ¶ 20.

Since One World's formation, it has extensively advertised and marketed its WLF Events using the Water Lantern Festival mark, spending in excess of $510,000.00 on advertising and promotion in 2018 alone. Id. at ¶ 21. One World's marketing efforts resulted in over 35 events with an aggregate of more than 120,000 participants across the United States in 2018. Id. at ¶ 22.

Since Defendants began their infringing use of the Water Lantern Festival mark in association with 1000 Lights' events, One World has been bombarded with consumer confusion, including emails, phone calls, and website inquiries from over one hundred consumers and multiple venues who have reached out to One World with the belief that it was associated with 1000 Lights' events. Id. at ¶¶ 33-42.

Lastly, the evidence strongly suggests that Defendants intentionally copied the Water Lantern Festival mark in an effort to confuse consumers and gain the benefit of One World's goodwill. Menendez and Kenney worked in promoting and hosting WLF Events immediately prior to the formation of 1000 Lights and Defendants did not choose to use "water lantern festival" in the promotion of 1000 Lights events randomly, by accident, or by necessity.

Therefore, even if this Court determines that the Water Lantern Festival mark is merely descriptive, the Court should rule that the Water Lantern Festival mark is protectable because the secondary meaning factors discussed in Forney Indus., Inc., 835 F.3d at 1253 weigh heavily in One World's favor.

*Light the Water*

One World's federal application for registration of the Light the Water mark was approved for publication as a protectable mark by United States Patent and Trademark Office examining attorney, Robert Guliano, on November 5, 2018. Furthermore, it appears to be undisputed that "Light the Water" is protectable as a suggestive mark.

    **ii.    One World has used the Water Lantern Festival and Light the Water Marks in Commerce and is the Senior User of the Marks.**

*Water Lantern Festival*

One World began using the Water Lantern Festival mark in commerce to market its WLF Events at least as early as November 17, 2017. It is undisputed that One World has used the Water Lantern Festival mark in commerce at least as early as "the beginning of 2018." Answer at ¶ 28.

*Light the Water*

The dispute between the parties regarding the Light the Water mark centers on the parties' use of the mark in commerce. Defendants allege that 1000 Lights "launched [its] website www.lightthewater.com that included an event page allowing customers to purchase tickets for their first three events" on July 17, 2018. Counterclaim at ¶ 44. It is therefore undisputable that 1000 Lights' earliest claim to use in commerce is July 17, 2018.

In contrast, One World began using the Light the Water mark in commerce to market tickets to WLF Events as early as November 17, 2017. In association with marketing and advertising the sale of tickets to WLF Events, the earliest iteration of One World's website stated, "Water Lantern Festival is coming to light the water in Salt Lake City" and "Water Lantern Festival brings people together to Light the Water (capitalized) in a magical night that includes

13

food, music, and beauty as the lanterns reflect upon the water." Knight Dec. at ¶ 6. Furthermore, after a consumer purchased a WLF Event ticket, One World began sending confirmation information including the tagline, "Light the Water", as early as April 26, 2018. Id. at ¶ 7. While Defendants dispute the "in commerce" aspect of One World's use of its marks in November 2017, Defendants' contention in that regard is moot because it is undisputable that One World used the Light the Water mark in connection with the sale of WLF Event tickets as early as December 7, 2017, when Menendez was still employed by YOLO and over seven months prior to 1000 Lights' first use of "Light the Water".

    **iii.**    **Defendants' Use of "Water Lantern Festival" and "Light the Water" Creates a Likelihood of Confusion Regarding the Source of Services.**

In order to demonstrate likelihood of confusion, Courts within the Tenth Circuit have generally considered the following factors: (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in using the mark; (c) evidence of actual confusion; (d) similarity of products/services and manner of marketing; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks. See Utah Lighthouse Ministry, 527 F.3d at 1054. The factors are considered in their entirety and no factor is dispositive. Id.

The likelihood of confusion factors in this case weigh heavily in One World's favor. First and foremost, the services offered by One World and 1000 Lights are practically identical. In fact, one of One World's claims against 1000 Lights is that 1000 Lights' events are essentially an exact rip off of One World's WLF Events. Furthermore, the marks are extraordinarily similar as well, with 1000 Lights using the exact terms "water lantern festival" and "light the water". Defendants are unlikely to dispute the similarity of the marks or the associated services.

With regard to evidence of actual confusion, while such evidence is not necessary to show a likelihood of confusion, actual confusion is the "best evidence of a likelihood of confusion in the marketplace." Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 74 (10th Cir. 1958). Since 1000 Lights began hosting events, One World has been bombarded with evidence of confusion from consumers and event venues. See Knight Dec. at ¶¶ 33-42. For each event held by 1000 Lights, One World has received emails, phone calls, and/or website inquiries from 1000 Lights' customers who believe that One World is somehow associated with 1000 Lights. Id. at ¶ 35. Furthermore, multiple venues that have booked events for 1000 Lights have expressed a belief that they were booking venues One World's WLF Event. Id. at ¶¶ 38-41.

Finally, the evidence strongly suggests that 1000 Lights intentionally copied One World's marks in order to capitalize on One World's goodwill. Menendez worked extensively on WLF Events for almost a year before the formation of 1000 Lights. Id. at ¶ 9. Kenney worked as a contractor for WLF Events prior to founding 1000 Lights. Id. at ¶ 10. Defendants were well aware of One World's Water Lantern Festival and Light the Water marks and chose to use the marks in order to gain the benefit of One World's goodwill, dilute the value of the marks, and create confusion. Based upon 1000 Lights' intentionally copying One World's marks, One World is entitled to an inference of likelihood of confusion." See Utah Lighthouse Ministry, 527 F.3d at 1055 (holding that "evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion."). Therefore, this Court should find that One World has satisfied the likelihood of confusion requirement.

When taken as a whole, the likelihood of confusion factors weigh heavily in One World's favor because the marks and associated services are nearly identical, there is ample evidence of actual consumer confusion, and 1000 Lights' deliberated copied One World's trademarks.

One World has demonstrated the requisite likelihood of prevailing on its claim of trademark infringement because (1) the Water Lantern Festival and Light the World marks are protectable marks, (2) One World is the senior user of the Water Lantern Festival and Light the Water marks in commerce, and (3) 1000 Lights' use of the terms "water lantern festival", and "light the water" creates a likelihood of confusion in the marketplace.

### c.  Defendants Efforts to Capitalize on Consumer Confusion are Improper.

Along with enjoining Defendants' use of any variation of the terms "water lantern festival" and "light the water", this Court should enjoin Defendants from capitalizing on existing confusion by attempting to host events at venues where WLF Events are already scheduled.  One World's request in this regard is inextricably linked to One World's trademark infringement claims and the existing confusion between the marks, which has been deliberately curated and fostered by Defendants.

### 2.  One World Will Experience Irreparable Injury if the Injunction is Denied.

Case law suggests that a preliminary showing of likelihood of confusion alone is a sufficient showing of irreparable injury to support a preliminary injunction.  <u>GTE Corp. v. Williams</u>, 731 F.2d 676, 678 (10th Cir. 1984) (citing <u>Paco Rabanne Parfums v. Norco Enterprises, Inc.</u>, 680 F.2d 891, 894 (2d Cir. 1982) (holding that likelihood of damage to good will and reputation caused by confusing similarity entitles a plaintiff to a preliminary injunction); <u>P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.</u>, 462 F.2d 134, 136 (2d Cir. 1972) (holding that

confusing similarity is itself sufficient injury to support a preliminary injunction); Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc., 698 F.2d 862, 867 (7th Cir. 1983) (holding that a trademark owner's inability to control the quality of the infringing party's product is irreparable injury).

While the court in GTE Corp. held that delay in seeking relief may "undercut a presumption that infringement alone has caused irreparable harm [during litigation]" and that "such delay may justify denial of a preliminary injunction for trademark infringement" (731 F.2d at 678), there is no delay on the part of One World in this case to enforce its trademark rights. Upon discovering 1000 Lights' infringement of the Water Lantern Festival and Light the Water marks in July 2018, One World immediately prepared and sent a cease and desist letter in early August 2018. Knight Dec. at ¶ 13. Because One World did not delay seeking relief against Defendants' infringing use of the Water Lantern Festival and Light the Water marks, this Court should follow the precedent in the Tenth Circuit that likelihood of confusion is sufficient to show irreparable injury in support of a preliminary injunction.

### 3. The Threatened Injury to One World Outweighs the Injury to 1000 Lights.

The court in General Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1229 (10th Cir. 2007) stated that "when a case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." Therefore, like the factor of irreparable harm, this factor weighs heavily in favor of One World because it has sufficiently established its underlying claim for trademark infringement.

### 4. An Injunction is Not Adverse to the Public Interest.

With regard to the purpose of trademark law, the United States Supreme Court has noted:

> Trademark law protects the public by making consumers confident that they can identify brands they prefer and can purchase those brands without being confused or misled. Trademark laws also protect trademark owners. When the owner of a trademark has spent considerable time and money bringing a product to the marketplace, trademark law protects the producer from pirates and counterfeiters.

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 784 (1992). In this case, the public interest would be best served by enjoining Defendants from creating and benefiting from marketplace confusion by using the any variation of the terms "water lantern festival" and "light the water".

## V. CONCLUSION

Based upon the foregoing, One World has shown a likelihood of success on the merits of its claims of infringement, including Defendants' efforts to capitalize on the confusion created by the infringement. One World will suffer irreparable harm unless an injunction is issued, and the threatened injury to One World outweighs the potential injury to 1000 Lights. Finally, an injunction enjoining Defendants' continued infringement is not contrary to public interest. For all of the foregoing reasons, the Court should issue the preliminary injunction.

DATED this 28th day of February 2019.

                                           PECK HADFIELD BAXTER & MOORE, LLC

                                           */s/ Michael D. Jewell*
                                           Michael D. Jewell
                                           Brandon J. Baxter

                                           *Attorneys for Plaintiffs/Third-Party Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2019, a true and correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** has been served upon all parties and/or attorneys with electronic filing accounts by submitting the same for electronic filing.

*/s/ Michael Jewell*
Michael Jewell